United States District Court
Southern District of Texas
**ENTERED**
July 27, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SAUL ZUNIGA, § | |
| Movant, § | |
| § | Case No. 1:14-cv-187 |
| v. § | |
| § | (Criminal No. 1:12-cr-1140-1) |
| UNITED STATES OF AMERICA, § | |
| Respondent. § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Saul Zuniga's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereinafter, Zuniga's "Motion" or "§ 2255 Motion"). Dkt. No. 1. For the reasons stated below, it is recommended that Zuniga's § 2255 Motion be **DISMISSED WITH PREJUDICE**. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

### I. Jurisdiction

Zuniga is challenging the judgment of conviction and sentence entered by this Court on October 7, 2013. *See United States of America v. Zuniga*, No. 1:12-cr-1140-1, Dkt. No. 43 at 1.[1] This Court has jurisdiction over Zuniga's Motion pursuant to 28 U.S.C. §§ 1331 and 2255.

---

[1] Hereinafter, Zuniga's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

## II. Background and Procedural History

On April 25, 2013, Zuniga pleaded guilty to possession with intent to distribute a quantity more than 50 grams, that is, approximately 8.62 kilograms (18.96 pounds) of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. CR Dkt. No. 43 at 1. On September 23, 2013, Senior United States District Judge Hilda Tagle sentenced Zuniga to 175 months of imprisonment and a five-year term of supervised release. *Id.* at 2-3. Judgment was entered on October 7, 2013. *Id.* at 1. Zuniga did not appeal. Dkt. No. 1 at 2.

On September 19, 2014, Zuniga filed his instant § 2255 Motion. Dkt. No. 1 at 13.[2] In his § 2255 Motion, Zuniga alleges that his counsel at sentencing, Ricardo Adobbati, deprived him of effective assistance of counsel because, after agreeing to do so, Adobbati failed to file a notice of appeal. *Id.* at 4. Zuniga also alleges that Adobbati provided ineffective assistance of counsel when he failed to object to the Court's assessment of two criminal history points in the presentence investigation report ("PSR"), and when Adobbati failed to investigate Zuniga's substance abuse as a possible mitigating factor at sentencing. *Id.* at 5-7.

On October 2, 2014, the Court ordered the Government to respond to Zuniga's § 2255 Motion. Dkt. No. 4. In that order, the Court gave the Government two options: (1) file a response on or about November 28, 2014, to Zuniga's claim that

---

[2] Zuniga indicates that he placed his § 2255 Motion in the prison mailing system on September 19, 2014. Dkt. No. 1 at 13. Accordingly, the Court will consider his Motion filed on that date. *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

his counsel failed to pursue a requested appeal; or (2) file a motion requesting a court-ordered affidavit from Zuniga's former counsel by November 14, 2014. *Id.* On October 14, 2014, the Government filed a motion seeking the Court to order Adobbati to file an affidavit responding to Zuniga's claim that Adobbati failed to file a requested appeal. Dkt. No. 9. On October 15, 2014, the Court granted the Government's motion. Dkt. No. 10. In compliance with the Court's order, Adobbati filed his affidavit on January 14, 2015. Dkt. No. 16.

The Court set an evidentiary hearing for April 13, 2016, and appointed counsel to represent Zuniga. Dkt. No. 20. On February 22, 2016, Zuniga's habeas counsel sought a continuance, and the Court reset the evidentiary hearing to June 10, 2016. Dkt. Nos. 27, 33. At the hearing, Zuniga and Adobbati both testified regarding what took place during the course of representation. *See* Dkt. No. 42.

### III. Legal Standards

**A. 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If an error is not of

constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

### B. Ineffective Assistance of Counsel

The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399, 1405 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only the trial, but also pretrial proceedings — including the plea-bargaining process. *Laffler v. Cooper*, ____ U.S. ____, 132 S.Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Laffler*, 132 S.Ct. 1376, 1385-1386.

In *Strickland v. Washington*, the Supreme Court announced that in order to succeed on an ineffective assistance of counsel claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts need not even address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the

test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. As it is easy to second-guess counsel's performance after a conviction or adverse sentence, a fair assessment of performance requires reconstructing the circumstances of the challenged conduct from the counsel's perspective at the time rather than looking towards the "distorting effects of hindsight." *Id.* at 689. As such, counsel is strongly presumed to have performed adequately and made decisions using reasonable professional judgment. *Id.* at 690.

Additionally, the sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions. *Id.* at 691. As stated by the Supreme Court, an attorney's actions are usually based on information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client has said. *Id.* Counsel's conversations with the defendant may then be critical to properly assessing his actions in the course of litigation. *Id.*

### IV. Discussion

As stated above, Zuniga's Motion asserts three claims. Dkt. No. 1 at 5-7. First, Zuniga alleges that Adobbati provided ineffective assistance by failing to file a timely notice of appeal as instructed. *Id.* at 4. Second, Zuniga alleges that Adobbati provided ineffective assistance by failing to object to the application of two criminal history points assessed in his presentence investigation report (PSR). *Id.* at 5.

Finally, Zuniga alleges that Adobbati provided ineffective assistance by failing to investigate and argue Zuniga's drug abuse problem as a mitigating factor in his criminal conduct. *Id.* at 7.

### A. Whether Adobbati Failed to File an Appeal on Zuniga's Behalf

A defendant claiming that his counsel failed to file a notice of appeal may establish ineffective assistance of counsel by showing that his counsel provided ineffective assistance and that, but for his counsel's ineffective assistance, he would have timely appealed. *Roe v. Flores–Ortega*, 528 U.S. 470, 476-477 (2000). Where counsel disregards the defendant's wish to appeal, counsel's performance is considered ineffective, regardless of whether the defendant can show that he possessed a meritorious basis for appeal. *Id.* at 477. If a defendant demonstrates by a preponderance of the evidence that he directed his counsel to file an appeal, prejudice is presumed and the defendant is entitled to an out-of-time appeal. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The defendant need only show "that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Id.* at 265. Further, this applies even when the defendant enters into a plea agreement waiving his right to collateral review or direct appeal. *Id.* at 266; *United States v. Cong Van Pham*, 722 F.3d 320, 326 (5th Cir. 2013).

Where a defendant has not specifically directed his counsel to file an appeal, the Court has an obligation to determine whether his counsel failed to consult with him about an appeal. *Flores-Ortega*, 528 U.S. at 478. If counsel had failed to consult with him regarding an appeal, the Court must also determine whether this

failure constitutes deficient performance. *Id*. The Fifth Circuit recently addressed how a court analyzes ineffectiveness of counsel claims "when the defendant has not clearly conveyed his wishes [regarding an appeal] one way or the other [:]"

> Under *Flores–Ortega*, the first *Strickland* prong begins with the question whether counsel "consulted" with the defendant regarding an appeal. "Consulting" is a term of art that means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."
>
> If, however, counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

*Cong Van Pham*, 722 F.3d at 323 (footnotes, citations and formatting omitted).


1) **The Affidavit and Hearing Testimony of Zuniga.**

In his § 2255 Motion, Affidavit and Brief in Support, Zuniga makes various assertions regarding Adobbati's representation. Zuniga claims he instructed Adobbati to file a notice of appeal on his behalf. Dkt. No. 1 at 7. In

response to his instructions, Zuniga states that Adobbati told him that Zuniga should contact Adobbati's office once he arrived at his place of confinement. Dkt. No. 2 at 2. However, Adobbati failed to file a notice of appeal on Zuniga's behalf. Dkt. No. 1 at 7. Zuniga further alleges he wrote Adobbati several letters while in transit to FCI Loretto. Adobbati did not respond to his letters until August 11, 2014, when he provided Zuniga with a copy of the indictment, PSR, and judgment in Zuniga's criminal case. Dkt. Nos. 2 at 2, 15 at 3.

At the evidentiary hearing, Zuniga testified regarding his recollection of what transpired during the course of Adobbati's representation. Adobbati first began representing Zuniga after his previous attorney withdrew following his rearraignment hearing. Dkt. No. 42 at 5-6. This was the first time Zuniga met Adobbati, and Adobbati met with him once more before the sentencing hearing. *Id.* at 6. During that meeting prior to sentencing, Zuniga testified that Adobbati never went over or the PSR with Zuniga and that Adobbati told Zuniga that he should simply tell the judge that they had discussed the PSR when asked by the Court. *Id.* at 23.

Zuniga also testified that, after his sentencing hearing, he met again with Adobbati. *Id.* at 6. According to Zuniga, he told Adobbati during the meeting that he wished to appeal his sentence because he was upset about receiving a two-level enhancement which impacted his sentence. *Id.* at 6, 19-21. Zuniga further testified that Adobbati told him that he would visit Zuniga in "some weeks," so that Zuniga could sign paperwork necessary for the appeal. *Id.* at 6. However, Zuniga testified

that Adobbati never showed up to visit him before or after being transported to FCI Loretto, and that he was unable to communicate with Adobbati. *Id*. at 6-9.

Beginning on October 30, 2013, Zuniga testified that he wrote Adobbati multiple letters referencing his wish to appeal his sentence, but that he did not send any letters while in transit to FCI Loretto. *Id*. at 28-29. Zuniga was unable to send these letters earlier because he had lost Adobbati's address and contact information. *Id*. Zuniga testified that Adobbati finally replied to his correspondence dated June 23, 2014. *Id*. at 30-31. Zuniga further noted that this was the first letter he sent after learning that the correct addresses of the sender and recipient were required for all correspondence placed in the mail. *Id*. Finally, Zuniga testified that he was not made aware of the adoption of the two-level assessment that increased his sentence until after he arrived at FCI Loretto. *Id*. at 20-22. It was there that Zuniga was informed by a fellow inmate regarding the sentencing enhancement, and when he decided to appeal his sentence. *Id*. at 20, 22.

2) **The Affidavit and Hearing Testimony of Adobbati.**

In his Affidavit, Adobbati stated that he was appointed to represent Zuniga at the sentencing hearing after Zuniga terminated his previous attorney. Dkt. No. 16 at 1. Over the course of several meetings prior to sentencing, Adobbati discussed with Zuniga the contents of the PSR, the probable sentence, and advised him of his rights regarding sentencing. *Id*. at 1-4. Zuniga never notified Adobbati of his intent to appeal, and Adobbati was not provided information from Zuniga's

prior attorney of any intention to appeal. *Id.* Immediately following the sentencing hearing, Adobbati met with Zuniga in the holding cell adjacent to the courtroom. *Id.* at 4. While Zuniga indicated to Adobbati that he understood the sentence imposed, he did not indicate any dissatisfaction or wish to appeal the sentence. *Id.*

In 2014, during the month of August, Adobbati stated he received for the first time correspondence from Zuniga. *Id.* However, in that letter dated August 4, 2014[3], Zuniga did not mention any request to file an appeal. *Id.* It was not until he received Zuniga's correspondence on September 2, 2014[4], that Adobbati learned of Zuniga's intent to appeal his sentence. *Id.* In response to Zuniga's latest correspondence, Adobbati sent Zuniga a letter: 1) noting that it was the first time Zuniga had mentioned any request to appeal the sentence imposed; 2) informing Zuniga that he was no longer his counsel following the sentencing hearing; and 3) enclosing a "Notice to Appeal" if Zuniga wished to pursue an appeal on his own. *Id.* On September 8, 2014, Adobbati received another letter from Zuniga requesting a copy of the sentencing transcript and referencing other prior correspondence. *Id.* at 5. Adobbati stated, however, that he received no other correspondence from Zuniga in addition to the letters referenced above. *Id.*

At the evidentiary hearing, Adobbati testified he was appointed by the Court after Zuniga pleaded guilty. Dkt. No. 42 at 36. Following his appointment, Adobbati and Zuniga's previous attorney went over Zuniga's case. *Id.* Adobbati and Zuniga later went over Zuniga's PSR "paragraph by paragraph." *Id.* at 38. During

---

[3] Adobbati stated he received the letter on August 7, 2014.
[4] Adobbati stated the letter was dated August 25, 2014.

that meeting, Adobbati discussed with Zuniga his plan to file an objection to a two-level enhancement as calculated in the PSR, but that Zuniga did not indicate any wish to appeal his projected sentence. *Id.* at 37-38.

Although Zuniga was assessed the contested two-level enhancement, he received a one-third reduction in his sentence after the Court granted the Government's motion. *Id.* at 38. Adobbati spent five to ten minutes speaking with Zuniga immediately following the sentencing hearing. *Id.* at 39. There, Zuniga expressed his happiness with the reduced sentence, but made no other representations regarding any desire to appeal his sentence. *Id.* Adobbati further testified that, after advising Zuniga of his right to appeal, Zuniga did "not make any comment one way or the other[.]" *Id.* at 39, 41. Adobbati did recall that Zuniga wanted him to look into whether he could retrieve "a truck" for Zuniga, but that Adobbati was unsure as to what truck Zuniga was referring. *Id.* at 39-40. Adobbati testified that he had no record, letter, message or any form of evidence that would show Zuniga made any attempt to contact him after the sentencing hearing until he received Zuniga's correspondence dated August 4, 2014. *Id.* at 43-44. Adobbati added that he was surprised because that letter mentioned prior attempts by Zuniga to contact him through correspondence he never received. *Id.*

## V. Analysis

The Court set an evidentiary hearing to receive testimony regarding what transpired between Adobbati and Zuniga in the holding cell immediately following Zuniga's sentencing hearing. It is clear that, prior to sentencing, some consultation

occurred between Adobbati and Zuniga regarding Zuniga's appellate rights. *See generally* Dkt. No. 42. Both testified that they spoke after Zuniga's sentence was pronounced. *Id.* at 6, 39. However, while Zuniga contends that he told Adobbati to file an appeal, Adobbati alleges that Zuniga was happy that he received a one-third reduction in his sentence. *See id.* Further, Zuniga claims to have mailed correspondence to Adobbati on multiple occasions beginning in October, 2013, but Adobbati claims that he received the first letter from Zuniga until August, 2014. *Id.* at 24, 43. Adobbati also maintained that Zuniga made no representations regarding a desire to appeal during the course of representation or in the first post-conviction letter he received. *Id.* at 29.

The Court finds Adobbati's testimony was more credible and consistent, whereas Zuniga's testimony was undermined by inconsistencies. First, Zuniga alleged in his affidavit that he told Adobbati that he wished to appeal his sentence because he did not believe the two-level enhancement should have applied to him. Dkt. No. 2 at 1. During the evidentiary hearing, however, Zuniga testified that he did not realize the Court applied the two-level enhancement until after he arrived at FCI Loretto. Dkt. No. 42 at 20-22. Further, Zuniga testified that while he was still in a local detention center, Adobbati told him that Adobbati would bring him the appellate paperwork to sign, an allegation significantly different from what he stated in his affidavit and Motion. *Compare* Dkt. Nos. 1 at 7, 2, *and* 42 at 18. Second, Zuniga stated in his affidavit that he wrote letters to Adobbati while in transit. Dkt. No. 2 at 2. However, Zuniga testified that he wrote his first letter

after he arrived at FCI Loretto. Dkt. No. 42 at 23-24, 29. Finally, Zuniga admitted that Adobbati may not have received his letters prior to one dated June 23, 2014, because "a letter must have your personal information and the information of the person you're addressing." *Id.* at 30. Prior to this date, Zuniga indicated that he failed to include the required information on any correspondence. *Id.* at 30-31.

Meanwhile, Adobbati's testimony at the evidentiary hearing was consistent during the hearing and with his affidavit. For example, Adobbati testified that Zuniga made no comment "one way or the other" about being upset with the sentence or an intent to appeal. Dkt. No. 42 at 38. In his affidavit, Adobbati similarly stated that "no comments were made that [Zuniga] was not satisfied or that an appeal be filed." Dkt. No. 16 at 4. Further, Adobbati testified that the post-sentencing conversation was memorable because Zuniga seemed "more worried about his truck" than his sentence, and that Zuniga's family had also inquired about the vehicle. Dkt. No. 42 at 39, 41-42. In his affidavit, Adobbati specifically mentioned Zuniga's family inquiring about the vehicle but that they expressed no concerns regarding appealing Zuniga's sentence. Dkt. No. 16 at 3. Further, Adobbati testified regarding noteworthy facts, including information Adobbati and Zuniga discussed in relation to the PSR, which coincided with his affidavit declarations. *See generally* Dkt. Nos. 16, 42.

Accordingly, Zuniga has failed to show, by a preponderance of the evidence, that Adobbati failed to file a requested notice of appeal. Zuniga's claim, then,

alleging that Adobbati failed to file a notice of appeal on Zuniga's behalf as instructed should be **DISMISSED**.

### A. Zuniga's Remaining Claims

Zuniga's remaining claims also lack merit. Zuniga also alleges that Adobbati provided ineffective assistance of counsel when Adobbati failed to: (1) object to the assessment of two criminal history points in the PSR; and (2) investigate Zuniga's drug problem as a possible mitigating factor at sentencing. Dkt. No. 1 at 5-7.

First, while Adobbati did not make the objections identified by Zuniga, Adobbati did file objections to the PSR, and those objections were denied. *See* CR Dkt. No. 27, 43, 44. Counsel is granted substantial latitude to pursue certain tactical choices over other possible avenues, and counsel is not ineffective for not pursuing meritless objections. *See United States v. Fields*, 565 F.3d 290, 296 (5th Cir. 2009). Zuniga's proposed objection to the PSR is meritless because the provision Zuniga identifies was not in the sentencing guidelines that were used in calculating his criminal history. *See* U.S.S.G. § 4A1.1(e) (2012 ed.); Memorandum from the Office of Research and Data and the Office of General Counsel to the United States Sentencing Commission Chair Sessions and Commissioner Sheon (September 1, 2010), *available at* http://www.ussc.gov/sites/default/files/pdf/research/retroactivityanalyses/recency/20100901_Recency_Retro.pdf (describing the "recency rule" and its impact on sentencing if applied retroactively). Further, Zuniga's criminal history score was calculated through use of § 4A1.1 (d), not subsection (e). U.S.S.G.

§ 4A1.1(d) (2012 ed.); CR Dkt. No. 37 at 7. A district court's application of the sentencing guidelines, however, is not a viable ground for a § 2255 petition. *See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

Second, Adobbati had a duty to make a reasonable investigation, or a decision that such investigation was unnecessary, into mitigating facts or evidence for sentencing purposes. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984). While the record is unclear regarding the extent of Adobbati's investigation or decision to investigate Zuniga's history of substance abuse, Zuniga did inform Judge Tagle about his substance abuse. *See* Dkt. No. 61 at 9. As a result, Judge Tagle discussed the role of drugs in Zuniga's life, and recommended to the Bureau of Prisons that Zuniga be placed in a substance abuse program. *Id.* at 10-11. Therefore, the Court finds that no prejudice occurred from Adobbati failure to argue for consideration of Zuniga's substance abuse as a mitigating factor during sentencing. For these reasons, the undersigned recommends that Zuniga's remaining claims also be **DISMISSED**.

## VI. Certificate of Appealability

A certificate of appealability shall not issue unless the petitioner/movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations

and citations omitted). Said another way, where claims have been dismissed on the merits, the movant/petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case as Zuniga has not made a substantial showing of the denial of a constitutional right.

## VII. Recommendation

For the reasons stated above, it is recommended that Zuniga's § 2255 Motion be **DISMISSED WITH PREJUDICE**. Additionally, it is recommended that the Court decline to issue a certificate of appealability.

## VIII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** in Brownsville, Texas on this 26th day of July, 2017.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**